UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| LUCINDA SHEPPARD, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:05-cv-1657-SEB-VSS |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**Entry Discussing Complaint for Judicial Review**

Lucinda Sheppard ("Sheppard") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded** for further proceedings.

**I. BACKGROUND**

Sheppard applied for SSI on August 25, 2003, and for DIB on September 9, 2003, alleging an onset date of July 1, 2003. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted in Sacramento, California on August 5, 2004. Sheppard was present, accompanied by her attorney. Medical and other records were introduced into evidence. Sheppard testified.

The ALJ denied Sheppard's application on January 24, 2005. On September 9, 2005, the Appeals Council denied Sheppard's request for review of the ALJ's decision, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed.  The court has jurisdiction over Sheppard's complaint pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to

which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Sheppard met the nondisability requirements of the Act and was insured for benefits through the date of the ALJ's decision; (2) Sheppard had not engaged in substantial gainful activity since the alleged onset of disability; (3) Sheppard had the following medically determinable impairments - major depression, recurrent; rule-out adjustment disorder with depressed mood; post-traumatic stress disorder (PTSD); personality disorder, NOS; and back strain; (4) Sheppard did not have any impairment or combination of impairments that was or is expected to significantly limit her ability to perform basic work-related activities for a continuous 12-month period, and therefore, Sheppard did not have a "severe" impairment; (5) Sheppard's assertions regarding the nature and severity of her complaints were less than fully credible for the reasons set forth in the ALJ's decision; and (6) the observations of Ronald Gillespie were essentially credible, but they did not support a finding that Sheppard was more limited in her ability to perform basic work activities than established herein.  With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Sheppard was not under a "disability" as defined in the Act at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.    Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.   Analysis

The ALJ determined that Sheppard did not have a severe impairment which was expected to last for a continuous period of 12 months. Sheppard argues that the ALJ's decision is not supported by substantial evidence.

To be considered "severe," an impairment must significantly limit a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c); 416.920(c). At step two of the sequential analysis, the ALJ found that Sheppard's mental impairments were not "severe" until June 16, 2004, when she experienced an exacerbation of psychiatric symptoms. (R. at 29). The ALJ, however, found that while her major recurrent depression, post-traumatic stress disorder and personality disorder would limit her to simple, repetitive tasks with minimal public and peer contact, her condition would likely improve such that her impairments would not meet the 12-month duration requirement, and would also be considered "non-severe." (R. at 29-30). The ALJ stated that his finding that Sheppard had no medically determinable impairment that was expected to be "severe" for any continuous 12-month period was "essentially consistent with the opinion of the Disability Determination Service ("DDS") medical consultants, E. Harrison, M.D. and Donald R. Walk, M.D., who also reviewed the evidence and determined that the claimant's impairments were 'non-severe.'" (R. at 30). Sheppard argues that this is not an accurate statement of the DDS determination. The court agrees.

On September 25, 2003, Dr. Harrison completed a psychiatric review indicating that prior to June 2003 there was insufficient evidence, and from June to September 2003, the mental impairment was "severe," but that it "should be nonsevere by May 2004." (R. at 125, 137). In December 2003, Dr. Walk affirmed that the evidence did not suggest that a listing was met, but there were "severe symptoms with recent onset and appropriate tx" with expected improvement by May 2004 to non-severe. (R. at 139). Although the 12 month period of time was not satisfied at the time these reports were issued, the expected improvement by May 2004 did not come to pass. The Commissioner argues that even if Sheppard's interpretation is correct (that the agency physicians determined that Sheppard's symptoms were "severe"), the findings provided by Dr. Harrison show that her mental impairment caused only mild functional restrictions and thereby supported the ALJ's conclusions. This may be the case, however, the court cannot find in the first instance that even *if* Sheppard's mental impairments were "severe" for 12 months, the ALJ would find that her functional limitations were still mild enough to permit her to perform some work. Although Dr. Harrison and Dr. Walk "expected" improvement by May 2004, that is not, in

fact, what happened. They determined that her impairments were severe as of June 2003. The ALJ determined that in June 2004, Sheppard's symptoms worsened. The ALJ's conclusion at step two that Sheppard's mental impairments were not severe for the required 12 month period of time is not supported by the evidence upon which the ALJ relied. Whether this will ultimately lead to a finding that Sheppard was disabled as defined in the Act cannot be determined in this proceeding.[1]

Sheppard also argues that the ALJ's conclusion that her condition "responds well to medication" is not supported by substantial evidence. (R. at 30). The court is not able to trace the ALJ's reasoning in this regard. Sheppard consistently complained of side effects of Paxil, nausea and dizziness, with the exception of one appointment in September 2003 at which she stated that the Paxil was working well. (R. at 24, 146). In June 2003, the Paxil was reportedly not helping her, (R. at 120), in October 2003, she complained of nausea and dizziness and wanted to change medications (R. at 145), and in January 2004, the medications were not making any difference and she stated that she was constantly depressed (R. at 144). The ALJ acknowledged that her medication was changed to Lexapro in October 2003 because of the nausea and dizziness, and that in June and July 2004 she reported that the Lexapro was ineffective. (R. at 24, 25, 156, 158). In July 2004, her medication was changed to Zoloft. (R. at 156). To the extent the ALJ's decision in this case relied on his determination that Sheppard's mental impairment responded well to medication, such determination is not supported by substantial evidence.

---

[1] Sheppard further argues that the ALJ failed to properly weigh the opinion provided by Sister Fernandez, MSW. The ALJ discussed at length the statements made by Sister Fernandez, (R. at 26-27), and concluded that little evidentiary weight should be assigned to her opinion of extreme psychiatric limitation because that opinion was not supported by any contemporaneous progress notes and was based on an apparent misunderstanding of Sheppard's diagnoses and treatment history, as Sheppard was never diagnosed with a "bipolar disorder." *Id.* The court must decline any invitation to resolve conflicts in or reweigh the evidence. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."). The ALJ sufficiently articulated his assessment of Sister Fernandez' reports to enable the court to "trace the path of [his] reasoning," *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (quoting *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)), and there was substantial evidence to support the ALJ's evaluation. Moreover, the ultimate determination of whether a claimant is disabled is reserved to the Commissioner. *See* 20 C.F.R. §§ 416.927(e)(1); 404.1527(e)(1). Accordingly, there was no error in the ALJ's evaluation of Sister Fernandez' opinion on this record.

## III.  CONCLUSION

For the reasons described, the ALJ's decision is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED**.


Date: 12/13/2006

*[signature]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana